MARION WAGNER AND LIBERTY MUTUAL INSURANCE COMPANY, AN INSURANCE CORPORATION, APPELLANTS, V. UNICORD CORPORATION, APPELLEE.

526 N.W.2d 74

Filed January 13, 1995.   No. S-93-421.

Michael T. Brogan, of Brogan & Stafford, P.C., for appellants.

J. Joseph McQuillan and Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and HOWARD, D.J., Retired.

HASTINGS, C.J.

Marion Wagner and Liberty Mutual Insurance Company (collectively Wagner) appeal from the judgment of the district court sustaining the special appearance of Unicord Corporation, an Illinois corporation, and dismissing Wagner's petition against Unicord for lack of personal jurisdiction.

A jurisdictional question that does not involve a factual

dispute is a matter of law. Therefore, we reach a conclusion independent from that of the trial court on the jurisdictional issue. *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

Wagner assigns that the district court erred in holding that it cannot exercise personal jurisdiction over Unicord under Neb. Rev. Stat. § 25-536(1)(d) (Reissue 1989) or, alternately, under § 25-536(2), and erred in failing to consider whether sufficient minimum contacts existed between Unicord and Nebraska in order to exercise personal jurisdiction.

Wagner and his employer's insurance carrier, Liberty Mutual, filed a petition against Unicord for negligence and strict liability in tort. In the petition, Wagner contended that the district court for Stanton County had personal jurisdiction over Unicord because Unicord transacted business in Nebraska, contracted to supply "services or things" in Nebraska, and caused tortious injury in Nebraska.

Wagner alleged that, in 1988, his employer purchased from Precision Sewing Company three 1,500-foot spools of polyester rope manufactured by Unicord. The rope served to secure tarps to truck trailers prior to transporting freight. Wagner further alleged that during the course and scope of his employment he attempted to secure a tarp by using the rope manufactured by Unicord, but the rope broke apart causing Wagner to fall backward and fracture his left wrist. Wagner alleged that Unicord caused his injuries by its failure to properly splice the rope segments, failure to warn, and failure to properly test and inspect its product.

Wagner also alleged strict liability against Unicord on the ground that the defect existed at the time it left Unicord's control. Furthermore, according to Wagner, Unicord knew or should have known that the consumer would not inspect the rope prior to use and that the defect made the rope unreasonably dangerous.

Unicord filed a special appearance claiming that the Nebraska court lacked personal jurisdiction over it. The facts, furnished by way of pleadings, affidavits, interrogatories, and deposition, are not in dispute. Unicord is an Illinois corporation that manufactures rope. The alleged defective rope was sold by

Unicord to Waterbury Rope Mills, invoiced to that company at Deerfield Beach, Florida, which in turn had directed delivery to be made to Precision Sewing in Des Moines, Iowa. Unicord had no idea as to what happened to the rope after that time until the filing of this action.

Unicord had delivered products into Arkansas, California, Florida, Illinois, Iowa, Louisiana, Michigan, Minnesota, Missouri, and Pennsylvania. Unicord was unable to state whether its products were sold to wholesalers, retailers, or private consumers. It had no business offices in Nebraska; did not solicit business, sell products, or manufacture with the anticipation of selling products in Nebraska; and did not engage in a distribution system that brought products into Nebraska.

Unicord was listed in the Chicago yellow pages telephone directory as a manufacturer of rope. These directories had been shelved in the Norfolk City Library, as well as libraries in Bellevue, Columbus, Fremont, Grand Island, Lincoln, and Omaha.

Michael Brogan, Wagner's counsel, attested that Illinois' 2-year statute of limitations for personal injury barred Wagner from filing any action against Unicord in Illinois. Brogan stated that "an Illinois action was barred as of November 8, 1990, which was prior to plaintiffs learning that Unicord Corporation, an Illinois corporation, is the alleged manufacturer." Thus, Wagner filed the petition in Nebraska, which has a 4-year statute of limitations for personal injuries.

The district court sustained the special appearance of Unicord. The court held that subsection (1)(d) of the Nebraska long-arm statute, § 25-536, was not satisfied because a Chicago yellow pages telephone directory, obtained solely through the efforts of Norfolk library personnel, did not meet the statute's solicitation requirements. The court did not address whether Unicord had sufficient minimum contacts with Nebraska. However, it appears from the record that Unicord had no contacts with Nebraska apart from the present case.

Nebraska's long-arm statute, § 25-536, provides:

> A court may exercise personal jurisdiction over a person:
>
> (1) Who acts directly or by an agent, as to a cause of

action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

In addressing the special appearance, it is necessary to consider the breadth of the long-arm statute. Section 25-536(2) explicitly extends Nebraska's jurisdiction as far as the U.S. Constitution permits. *Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610 (8th Cir. 1994), *cert. denied, Hosoya Fireworks Co., Ltd. v. Barone*, ____ U.S. ____, 115 S. Ct. 359, 130 L. Ed. 2d 313; *Aaron Ferer & Sons Co. v. American Compressed Steel*, 564 F.2d 1206 (8th Cir. 1977); *Vergara v. Aeroflot "Soviet Airlines"*, 390 F. Supp. 1266 (D. Neb. 1975); *State ex rel. Gurnon v. Harrison*, 245 Neb. 295, 512 N.W.2d 386 (1994); *York v. York*, 219 Neb. 883, 367 N.W.2d 133 (1985); *Stucky v. Stucky*, 186 Neb. 636, 185 N.W.2d 656 (1971). As a result, we need only address whether Unicord has minimum contacts with Nebraska such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. See, *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *McGowan Grain v. Sanburg*, 225 Neb. 129, 403 N.W.2d 340 (1987). Confronted with a special appearance, the burden of proof rests upon Wagner to demonstrate the court's personal jurisdiction over Unicord. See *Williams v. Gould, Inc.*, 232

Neb. 862, 443 N.W.2d 577 (1989).

The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *24th and Dodge Ltd. v. Commercial Nat. Bank*, 243 Neb. 98, 497 N.W.2d 386 (1993). If the defendant established minimum contacts with Nebraska, then a court must consider the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Wagner argues that Unicord's listing in the Chicago yellow pages telephone directory warrants the exercise of personal jurisdiction because "manufacturers in metropolitan areas, like Chicago, should know that their Yellow Page solicitations will be far-reaching." Brief for appellants at 7.

In *Williams v. Gould, Inc., supra*, Gould operated a smelter in Omaha, but was not a Nebraska corporation. Gould employed a nonresident as a medical consultant to protect its Omaha employees from exposure to toxic substances. Gould also employed a Nebraska citizen as a medical consultant and health care provider for its Omaha employees. Gould employees filed a petition against Gould and its two medical consultants regarding injuries caused by exposure to lead, cadmium, and arsenic at Gould's Omaha smelter. The nonresident filed a special appearance objecting to personal jurisdiction by a Nebraska court. The record indicated that the two medical consultants communicated telephonically to discuss medical care of Gould employees. Furthermore, there was no dispute that a contract existed between Gould and the nonresident regarding compensation for services relative to Gould's Omaha smelter operation. We held that § 25-536 applied to the nonresident's contractual conduct and activities and that, through his contract with Gould, the nonresident purposefully

directed his activities toward Nebraska and purposefully availed himself of the privilege of conducting activities within Nebraska. In analyzing the due process issue, we stated:

> [W]hether a Nebraska court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with Nebraska are the result of unilateral acts. performed by someone other than the defendant, or whether the defendant himself acted in a manner which creates substantial connections with Nebraska, resulting in the defendant's "purposeful availment" of the benefits and protections of Nebraska law.

232 Neb. at 878, 443 N.W.2d at 588.

In the case at bar, the asserted contact with Nebraska is a Chicago telephone directory to which certain Nebraska libraries subscribe. We do not accept Wagner's premise that Nebraska can exercise personal jurisdiction over any corporation listed in a telephone directory of a major city in the United States. Unicord did not take any actions directed toward Nebraska. Thus, Wagner relies on the unilateral action of library personnel. Such unilateral contact initiated by a third party normally is simply too remote to invoke personal jurisdiction.

Wagner also argues that Unicord placed its product into the stream of commerce and that "it is reasonable to expect that the ultimate distribution would be widespread." Brief for appellants at 11. Again, the defendant must purposefully direct its conduct toward the forum state. The placement of a product into the stream of commerce, without more, generally is not proof of purposefully directed conduct toward the forum state. *Asahi Metal Industry Co. v. Superior Court, supra*; *McGowan Grain v. Sanburg*, 225 Neb. 129, 403 N.W.2d 340 (1987). The defendant must have some knowledge and expectation that the product would reach the forum state. *Burger King Corp. v. Rudzewicz, supra*; *Stoehr v. American Honda Motor Co., Inc.*, 429 F. Supp. 763 (D. Neb. 1977).

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), the U.S. Supreme Court considered whether Oklahoma may exercise personal jurisdiction over a nonresident automobile dealer and its distributor. The defendants' only connection with Oklahoma

was an automobile sold in New York to New York residents which became involved in an Oklahoma accident. The Court stated:

> [W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.
>
> It is argued, however, that because an automobile is mobile by its very design and purpose it was "foreseeable" that the . . . Audi would cause injury in Oklahoma. Yet "foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.

444 U.S. at 295.

In *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369 (8th Cir. 1990), the plaintiff, an Ohio corporation, purchased from Marion, a Delaware corporation, a dragline to strip mine coal. The defendants, a Japanese corporation and its subsidiary, manufactured a component part of the dragline and shipped them to Marion which in turn sent the parts on to North Dakota where they were incorporated into the machine and where the damage occurred. The plaintiff filed a federal diversity action in North Dakota, alleging that the component part manufactured and shipped by the defendants cracked due to improper welding and casting. The U.S. Court of Appeals for the Eighth Circuit held that North Dakota did not have personal jurisdiction over the defendants. The court stated:

Unless it can be shown that appellees purposefully directed their activities towards North Dakota, the mere fact that Marion brought two of the cams it purchased from Japan Steel into North Dakota does not justify the exercise of personal jurisdiction over appellees. . . . By selling the cams to Marion, Japan Steel did nothing more than place its products in the stream of commerce. . . . [A]ppellees' placement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State.

*Id.* at 375-76.

In *Blum v. Kawaguchi, Ltd.*, 331 F. Supp. 216 (D. Neb. 1971), the defendant Kawaguchi, Ltd., a Japanese manufacturer, sold its product to a buyer in Omaha. The buyer then sold the product to the plaintiff. The plaintiff alleged that the defendant negligently designed and constructed the defective product. The U.S. District Court for the District of Nebraska held that the defendant had sufficient contacts for Nebraska to invoke personal jurisdiction. Of significance to the present case, the court held:

It is a fair statement that a sale of machinery would be classified a transaction of business in Nebraska and it does not follow that an indirect sale would necessarily alter the nature of the transaction. *It might be a different situation had the defendant made a sale elsewhere with the expectation that it was to be a final sale* [*that is, not for resale*].

(Emphasis supplied.) *Id.* at 220.

In terms of the contacts between Unicord and Nebraska, Unicord shipped its product to Iowa, and Wagner failed to establish that Unicord had any expectation that the Iowa delivery was not a final sale. Furthermore, Unicord did not maintain an office or agent or solicit business in Nebraska. None of the agreements between Unicord, Waterbury Rope Mills, and Precision Sewing were executed or performed in Nebraska. The rope in question did not originate in Nebraska nor was it destined for Nebraska. Unicord did not create, control, or employ the distribution system that brought the rope to Nebraska. Essentially, Wagner seeks to base jurisdiction on an isolated circumstance in contrast to evidence on the record

indicating that Unicord did not invoke the benefits and protections of Nebraska law by reason of any activities connected with the manufacture, sale, and delivery of the rope. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Unicord's lack of contacts with Nebraska divests Nebraska of jurisdiction regardless of issues of convenience and state interest. In *World-Wide Volkswagen Corp. v. Woodson, supra*, the Court stated:

> Thus, the Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington, supra*, at 319. Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

444 U.S. at 294. See, also, *Falkirk Min. Co. v. Japan Steel Works, Ltd., supra*. Under the facts presented, the invoking of personal jurisdiction over Unicord by a Nebraska court would offend traditional notions of fair play and substantial justice.

Lastly, Wagner argues that traditional notions of fair play and substantial justice demand personal jurisdiction over Unicord because Wagner is time barred from filing a petition in Illinois. However, Wagner cannot subject Unicord to a forum that Unicord has no contacts with merely because Wagner failed to act within Illinois' statute of limitations. Also, purposeful contact by the defendant is a threshold requirement. Thus, jurisdiction is not permissible without such contact, no matter how strong the plaintiff's interest. See *World-Wide Volkswagen Corp. v. Woodson, supra*.

The judgment of the district court is affirmed.

AFFIRMED.

LANPHIER, J., concurs in the result.