CRETE CARRIER CORPORATION, APPELLANT, V.
RED FOOD STORES, INC., AND BI-LO, INC., APPELLEES.
576 N.W. 2d 760

Filed March 27, 1998.    No. S-96-1211.

David L. Brown for appellant.

Andrew S. Pollock, of Knudsen, Berkheimer, Richardson, Endacott and Routh, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

CONNOLLY, J.

The appellant, Crete Carrier Corporation, appeals the district court's sustaining of the special appearance objecting to personal jurisdiction entered by the appellees, Red Food Stores, Inc., and BI-LO, Inc. The district court concluded that Red Food Stores' and BI-LO's contacts were insufficient to subject them to personal jurisdiction. We conclude that in the instant case, numerous telephone and mail communications made pursuant to an ongoing and long-term contract are sufficient to establish personal jurisdiction.

## BACKGROUND

Crete Carrier is a common carrier, incorporated in Nebraska, with its principal place of business in Lincoln. BI-LO is a Delaware corporation, with its principal place of business in Mauldin, South Carolina. BI-LO purchased appellee Red Food Stores in March 1994 and assumed all of Red Food Stores'

debts and liabilities. In June 1991, Red Food Stores entered into a transportation contract with Crete Carrier. The contract stated it would continue in force until canceled and was still in effect as of September 30, 1996. Under the contract, Red Food Stores agreed to indemnify and hold Crete Carrier harmless from any liability or expense for personal injury that resulted from Red Foods Stores' negligence. The record is unclear regarding how the contract was negotiated and which party solicited the contract. Red Food Stores and BI-LO state that they never negotiated the contract in Nebraska or sent a representative to Nebraska. However, the contract was required to be approved by Crete Carrier's marketing division in Nebraska.

Following BI-LO's purchase of Red Food Stores, all requests for Crete Carrier to transport products for Red Food Stores pursuant to the contract were initiated by employees of Red Food Stores and made to employees of Crete Carrier in Nebraska. Following shipment, Red Food Stores would again contact Crete Carrier's Nebraska office to verify that shipment had been completed. All billings for services performed by Crete Carrier originated in Nebraska, and payment for those services was sent to Nebraska. Likewise, claims made by Red Food Stores for cargo damage were presented to, and paid by, Crete Carrier employees in Nebraska. Between October 1, 1994, and September 30, 1996, Crete Carrier hauled 1,386 loads for Red Food Stores pursuant to the contract. As a result, Red Food Stores contacted Crete Carrier a minimum of 2,772 times during that period. Red Food Stores and BI-LO do not own property in Nebraska, have not had any business locations in Nebraska, have not advertised in Nebraska, have not paid taxes in Nebraska, and have never authorized an agent to accept service of process in Nebraska.

In June 1992, a driver employed by Crete Carrier was injured while unloading a truck at a Red Food Stores warehouse in Tennessee. As a result, Crete Carrier paid workers' compensation benefits to the driver. In June 1996, Crete Carrier filed the instant action against Red Food Stores and BI-LO, alleging that the driver's injuries were caused by Red Food Stores' and BI-LO's negligence and that Red Food Stores and BI-LO breached the 1991 contract by refusing to indemnify Crete Carrier for the

workers' compensation payments. Red Food Stores and BI-LO entered a special appearance in order to object to personal jurisdiction. The district court concluded that the sole contacts of Red Food Stores and BI-LO to the State of Nebraska were placing of telephone orders or instructions, being billed from Nebraska, remitting payments to Crete Carrier's Nebraska office, and other contacts resulting from a variety of paperwork generated through Crete Carrier's office. The court then determined that such contacts were not sufficient to subject Red Food Stores and BI-LO to the jurisdiction of the court. The district court further concluded that considering the nature of the action and the location where the negligence occurred, it would be burdensome, inefficient, and illogical to litigate the matter in Nebraska.

## ASSIGNMENTS OF ERROR

Crete Carrier assigns that the district court erred in (1) concluding that Red Food Stores' and BI-LO's contacts with Nebraska were insufficient to subject them to the personal jurisdiction of the court and (2) concluding that it would be unduly burdensome upon Red Food Stores and BI-LO to compel them to litigate the action in Nebraska.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when the determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *Crystal Clear Optical v. Silver*, 247 Neb. 981, 531 N.W.2d 535 (1995).

The burden of proof rests upon the plaintiff confronted with a special appearance to demonstrate the court's personal jurisdiction over the defendant. *Id.*

## ANALYSIS

### MINIMUM CONTACTS

Crete Carrier contends that Red Food Stores' and BI-LO's activities are such that they have sufficient minimum contacts

with Nebraska for the district court to assert personal jurisdiction over them. In particular, Crete Carrier argues that the years of continuous business dealings between Red Food Stores and Crete Carrier, the contract between the companies, and the minimum of 2,772 communications by Red Food Stores to Crete Carrier in Nebraska serve to establish sufficient minimum contacts on the part of Red Food Stores and BI-LO. However, Red Food Stores and BI-LO essentially argue that they have no physical presence in Nebraska, stating, for example, that they do not own property in Nebraska, have never advertised in Nebraska, have never had any business locations in Nebraska, and have not paid taxes in Nebraska. Red Food Stores and BI-LO further assert that they never negotiated a contract with Crete Carrier in Nebraska or sent a representative to Nebraska to deal with Crete Carrier and argue that the existence of a contract and telephone or mail communications are not sufficient to establish sufficient minimum contacts.

Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. *Crystal Clear Optical v. Silver, supra*; *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 1995), provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

In addressing the special appearance, it is necessary to consider the breadth of the long-arm statute. See, *Crystal Clear Optical v. Silver, supra*; *Wagner v. Unicord Corp.*, 247 Neb. 217, 526 N.W.2d 74 (1995). Section 25-536(2) expressly extends Nebraska's jurisdiction over nonresidents as far as the U.S. Constitution permits. *Castle Rose v. Philadelphia Bar & Grill, ante* p. 299, 576 N.W.2d 192 (1998); *Crystal Clear Optical v. Silver, supra*; *Wagner v. Unicord Corp., supra.* Therefore, we need address only whether Red Food Stores and BI-LO had such minimum contacts with Nebraska that the exercise of personal jurisdiction would not offend federal constitutional principles of due process.

The Due Process Clause of the U.S. Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *24th and Dodge Ltd. v. Commercial Nat. Bank*, 243 Neb. 98, 497 N.W.2d 386 (1993), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). See *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). In order to subject an out-of-state defendant to personal jurisdiction in the forum court, due process requires that the defendant have certain minimum contacts with the forum state so as not to offend " 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316. Thus, the determination of whether the district court has jurisdiction is a two-step process. First, we must determine whether Red Food Stores and BI-LO had the necessary minimum contacts with Nebraska; then, if such minimum contacts have been established, the contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and

substantial justice. See, *Burger King Corp. v. Rudzewicz, supra*; *Internat. Shoe Co. v. Washington, supra.*

The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Castle Rose v. Philadelphia Bar & Grill, supra*; *Wagner v. Unicord Corp., supra*; *24th and Dodge Ltd. v. Commercial Nat. Bank, supra.* This analysis requires that we consider the quality and nature of the defendant's activities in order to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process. *Internat. Shoe Co. v. Washington, supra*; *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

Under such an analysis, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Burger King Corp. v. Rudzewicz, supra*; *Castle Rose v. Philadelphia Bar & Grill, supra*; *Wagner v. Unicord Corp., supra.* Rather, it is essential in each case that there be some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* This requirement ensures that a defendant will not be subject to litigation in a jurisdiction solely due to random, fortuitous, or attenuated contacts. *Burger King Corp. v. Rudzewicz, supra*; *Castle Rose v. Philadelphia Bar & Grill, supra.* However, due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised. *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992); *Burger King Corp. v. Rudzewicz, supra*; *Castle Rose v. Philadelphia Bar & Grill, supra*; *Williams v. Gould, Inc., supra.*

Red Food Stores and BI-LO are correct in their assertion that the existence of a contract with a party in a forum state does not, in and of itself, provide the necessary contacts for personal jurisdiction in the forum state. *Burger King Corp. v. Rudzewicz, supra*; *Castle Rose v. Philadelphia Bar & Grill, supra*; *Williams v. Gould, Inc., supra.* Likewise, the mere use of interstate facilities, such as telephones, mail, or facsimile machines, is not

enough to confer jurisdiction. *Bell Paper Box, Inc. v. Trans Western Polymers*, 53 F.3d 920 (8th Cir. 1995); *Angelica Corp. v. Gallery Mfg. Corp.*, 904 F. Supp. 993 (E.D. Mo. 1995). However, this does not mean that the existence of a contract and the use of interstate communications may not be considered in the overall analysis. Mail and telephone communications sent by the defendant into a forum may count toward the minimum contacts that support jurisdiction. *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476 (3d Cir. 1993); *Angelica Corp. v. Gallery Mfg. Corp., supra.* Further, if a substantial connection is created, "even a single telephone call into the forum state can support jurisdiction." *Taylor v. Phelan*, 912 F.2d 429, 433 n.4 (10th Cir. 1990). See, *Grand Entertainment Group v. Star Media Sales, supra*; *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415 (10th Cir. 1988).

When dealing with contracts, it is the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, that must be evaluated in determining whether a defendant purposefully established minimum contacts within the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Castle Rose v. Philadelphia Bar & Grill, ante* p. 299, 576 N.W.2d 192 (1998); *Williams v. Gould, Inc., supra.* Accordingly, it has been held that a company's contacts were sufficient to subject it to personal jurisdiction in Missouri when there existed both a contractual relationship and contacts utilizing interstate communications. *Angelica Corp. v. Gallery Mfg. Corp., supra.*

Thus, the U.S. Supreme Court has stated:

"[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

*Williams v. Gould, Inc.*, 232 Neb. 862, 879, 443 N.W.2d 577, 588 (1989), quoting *Burger King Corp. v. Rudzewicz, supra.*

See, also, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (stating that limits on state jurisdiction imposed by due process have been substantially relaxed over time due to fundamental transformation in American economy).

The U.S. Supreme Court has further stated that " 'with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. . . .' " *McGowan Grain v. Sanburg*, 225 Neb. 129, 138, 403 N.W.2d 340, 347 (1987), quoting *Burger King Corp. v. Rudzewicz, supra*.

The district court concluded that the sole contacts of Red Food Stores and BI-LO with the State of Nebraska were placing of telephone orders or instructions, being billed from Nebraska, remitting payments to Crete Carrier's Nebraska office, and other contacts resulting from a variety of paperwork generated through Crete Carrier's office. However, Red Food Stores and BI-LO do not dispute that an ongoing contractual relationship has existed between them and Crete Carrier for a minimum of 5 years, nor do they dispute that they contacted Crete Carrier in Nebraska to place shipping orders and verify deliveries a minimum of 2,772 times over a 2-year period of that contract. Finally, Red Food Stores and BI-LO do not dispute that the instant case arises out of an alleged breach of the contract, and a copy of the contract is in the record. Thus, there is no dispute of fact regarding the existence, duration, or terms of the contract. However, under our conclusion in *Williams v. Gould, Inc., supra*, and the conclusions of the U.S. Supreme Court in *Burger King Corp. v. Rudzewicz, supra*, the district court was in error as a matter of law in not considering the length and nature of the contractual relationship of the parties.

The instant case does not present an issue where jurisdiction is sought on the basis of a single contract or a few contacts. Rather, Red Food Stores and BI-LO, both corporations, engaged in an ongoing contractual and business relationship with Crete Carrier, another corporation, over a period of years.

As part of this relationship, Red Food Stores continually made contact with citizens of Nebraska in order to carry out its business with Crete Carrier. Considering the quality and nature of such contacts, these activities are far from being contacts based on the unilateral activities of someone other than Red Food Stores; neither are they random, fortuitous, or attenuated. Rather, Red Food Stores and BI-LO actively created continuing relationships and obligations with Nebraska citizens. Furthermore, Crete Carrier's cause of action arises directly out of those contacts. Accordingly, we conclude the district court erred in its determination that Red Food Stores and BI-LO did not have sufficient minimum contacts with Nebraska to satisfy due process.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

Having determined that Red Food Stores and BI-LO had the necessary minimum contacts with Nebraska to support the exercise of personal jurisdiction over them, we next weigh the facts of the case to determine whether the exercise of personal jurisdiction would comport with " 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In doing so, we may consider the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz, supra*; *Wagner v. Unicord Corp.*, 247 Neb. 217, 526 N.W.2d 74 (1995), citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1982). These "other considerations" sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King Corp. v. Rudzewicz, supra*. In addition, where, as here, a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz, supra*. See, also, *Grand Entertainment Group v.*

*Star Media Sales*, 988 F.2d 476 (3d Cir. 1993) (burden on defendant who wishes to show absence of fairness or lack of substantial justice is heavy); *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989) (nonresident defendant failed to show any "other considerations" discussed in *Burger King Corp. v. Rudzewicz, supra,* which weigh against Nebraska court's exercise of personal jurisdiction over him).

In the instant case, although the district court concluded it would be burdensome, inefficient, and illogical to litigate the matter in Nebraska, Red Food Stores and BI-LO failed to provide any facts to support such a finding. The affidavits in the record provided by Red Food Stores and BI-LO do not state reasons or facts to show any "other considerations" as discussed in *Williams v. Gould, Inc., supra,* and *Burger King Corp. v. Rudzewicz, supra,* that would weigh against an exercise of personal jurisdiction over them. Accordingly, Red Food Stores and BI-LO have failed to show that an exercise of jurisdiction over them would offend notions of fair play and substantial justice.

## CONCLUSION

We conclude that the numerous telephone and written contacts between Red Food Stores and Crete Carrier, combined with the long-term and ongoing contractual relationship between the parties, are sufficient contacts to establish personal jurisdiction over Red Food Stores and BI-LO. We further conclude that Red Food Stores and BI-LO have not shown that any other considerations apply that would weigh against an exercise of jurisdiction. Accordingly, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

STEPHAN, J., not participating.