IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


VOSS V. BROWN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BRITTNEY A. VOSS, APPELLANT,

V.

KENNETH H. BROWN, APPELLEE.


Filed March 5, 2019.    No. A-17-1219.


Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Matthew P. Saathoff and Donald E. Loudner III, of Saathoff Law Group, P.C., L.L.O., for appellant.

Scott D. Jochim, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellee.


MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Brittany A. Voss appeals from an order of the district court for Washington County which sustained Kenneth H. Brown's motion to dismiss for lack of personal jurisdiction. Based on the reasons that follow, we affirm.

### BACKGROUND

Voss filed a complaint against Brown regarding a dispute over the ownership of and maintenance expenses for a horse named JP Skip Rusty Nail (Rusty). Voss had received the horse from Brown approximately six years prior to the litigation and had cared for it during that time. In her complaint, Voss brought three causes of action against Brown: a declaratory judgment action,

- 1 -

a quiet title action, and an unjust enrichment/quantum merit action. At all relevant times, Voss was a resident of Washington County, Nebraska, and Brown was a resident of Beaver Dam, Kentucky.

Brown filed a motion to dismiss the action for lack of personal jurisdiction, pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(2). An evidentiary hearing was held on the motion to dismiss, at which time exhibits were offered into evidence and live testimony of the parties and other witnesses was received.

The evidence showed that Voss met and began dating Brown's grandson, Kenneth Kellems, while Voss and Kellems were both attending Fort Scott Community College in Fort Scott, Kansas. Voss and Kellems were both involved in the rodeo at the college. Voss and Brown first met in the fall 2010 at Fort Scott when Brown came for a rodeo. Voss claims that Brown learned at that time that she was from Nebraska. In 2011, Voss and Kellems visited Brown at his farm in Kentucky and Voss was first introduced to Rusty during one of the visits.

On October 21, 2011, Brown delivered Rusty to Voss in Fort Scott, Kansas, while Voss was still attending Fort Scott Community College. There was conflicting testimony regarding what discussions occurred between the parties that led to Brown bringing Rusty to Voss, but the parties do not dispute that these discussions did not take place in Nebraska. Voss testified that she did not know Brown was bringing Rusty to Kansas until he was on his way with her. Brown testified that the parties had an understanding that he would deliver Rusty to Voss in Kansas.

In November 2011, Voss moved Rusty to her parents' farm in Washington County, Nebraska, where she has remained since. Brown claimed he did not know that Voss was going to take Rusty to Nebraska, but that when he found out he did not object to Rusty being in Nebraska. Voss claimed that she told Brown she would move Rusty to Nebraska when he delivered Rusty to Kansas.

Voss and Kellems both graduated from community college in December 2011 and moved in with Voss' parents in Nebraska. Voss claimed that Brown knew she and Kellems were moving to Nebraska after graduation. Between March and June 2012, Voss attended mortuary school in Indiana, and in June 2012, she and Kellems moved back in with Voss' parents in Nebraska.

Voss and both of her parents testified that in the summer of 2012, Brown was in Nebraska and stopped at Voss' parents' home for a visit. All three of them testified that Brown was in the area because of something to do with a tractor or tractor parts. Brown and Kellems, however, both testified that Brown never visited Voss or her parents. Brown testified that he never traveled to Nebraska for tractor parts.

On or about July 27, 2012, Brown issued a personal check payable to Voss to reimburse her for training costs, and instructed Kellems to give the check to Voss. Kellems took the check to Voss' parents' house and left it on the counter. Voss testified that she does not remember receiving the check and did not endorse it. Voss' mother testified that she endorsed the check and deposited it for Voss.

The parties also offered telephone records and testified about telephone calls made between the parties and between Brown and Kellems. Voss testified that Brown made frequent calls to Kellems when he was living in Nebraska, and also made calls to her in Nebraska. Brown also made telephone calls to Voss' parents' landline. Voss testified that most of Brown's telephone calls to her, Kellems, and her parents' landline had nothing to do with Rusty, but a few did. Brown testified

that he would call and talk to Kellems when he lived in Nebraska and they would discuss Rusty on occasion. He testified that he did not discuss Rusty on the telephone with Voss.

In January 2014, Voss and Kellems ended their relationship. At some point in 2015, Brown called Voss and told her he wanted to pick up Rusty. Voss told him she was using the horse for lessons and Brown told her to let him know when she was done with lessons, but she never called back. On November 25, 2016, Kellems sent Voss a text message at Brown's request, indicating that Brown wanted Rusty back and asking when Brown could come get her. Voss responded that Brown would have to call her if he wanted to discuss Rusty. Brown called Voss the next day and told Voss that he wanted to come get Rusty. Voss told Brown that Rusty was not his horse; that Brown had given it to Voss as a gift. Voss subsequently wrote Brown a letter indicating her belief that Rusty was her horse. In late 2016, Voss received a letter from Brown's legal counsel in Kentucky denying that Rusty was Voss' horse and requesting that Voss return Rusty to Brown.

Brown testified that he has traveled through Nebraska on his way to Wyoming on two occasions, stopping once at the Cabela's store in Sidney, Nebraska, and once at the Cabela's store in Kearney, Nebraska. Brown also testified that he has never done any of the following in Nebraska: lived, owned real estate, had a bank account, paid income taxes, derived any income, been licensed to do business, solicited or advertised any business, employed anyone or maintained any offices, or had a telephone number.

Following the hearing on the motion to dismiss, the trial court entered an order dismissing Voss' complaint with prejudice for lack of personal jurisdiction over Brown. The court found that there was no meaningful relationship between Brown, Nebraska, and the litigation. It found that "[Brown's] suit-related conduct did not create any meaningful contacts with Nebraska itself, and the fact that [Voss] claims to be affected in Nebraska (because she resides there) is insufficient to authorize personal jurisdiction over [Brown]." In addition to Brown not having sufficient minimum contacts with Nebraska, the court found that the exercise of personal jurisdiction over Brown would offend traditional notions of fair play and substantial justice.

## ASSIGNMENTS OF ERROR

Voss assigns that the trial court erred in (1) finding that Brown lacked the necessary contacts with the State of Nebraska; (2) finding that Brown could not reasonably anticipate being haled into a Nebraska court based on the quality and nature of Brown's activities; (3) failing to find that Brown's alleged agreement with Voss, his check payment to Voss, his demand letter to Voss, and the frequent telephone communications between the parties established sufficient minimum contacts with Nebraska; and (4) finding that exercising personal jurisdiction over Brown would offend traditional notions of fair play and substantial justice.

## STANDARD OF REVIEW

When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *RFD-TV v. WildOpenWest Finance*, 288 Neb.

318, 849 N.W.2d 107 (2014). An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo. *Id.* In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Id.*

ANALYSIS

Voss claims the trial court erred in concluding that the court lacked personal jurisdiction over Brown. Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions. *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018). Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018).

*Nebraska's Long-Arm Statute.*

Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits. *Nimmer v. Giga Entertainment Media, supra*. It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long arm statute. *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013). Thus, when a state construes its long arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause, the inquiry collapses into the single question of whether jurisdiction comports with due process. *Id.* Therefore, the issue is whether Brown had sufficient contacts with Nebraska so that the exercise of personal jurisdiction would not offend federal principles of due process. See *id.*

*Minimum Contacts.*

The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Nimmer v. Giga Entertainment Media, supra*. Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.*

In analyzing personal jurisdiction, we consider the quality and type of the defendant's activities to decide whether the defendant has the necessary minimum contacts with the forum state to satisfy due process. *Id.* Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections. *Id.* The "purposeful availment" requirement "'ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . or of the "unilateral activity of another party or a third person."'" *Id.* at 640, 905 N.W.2d at

- 4 -

532-33, quoting *S.L. v. Steven L.*, 274 Neb. 646, 653, 742 N.W.2d 734, 741 (2007). Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself or herself that create a "'substantial connection'" with the forum state. *Id.*

A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction. *Nimmer v. Giga Entertainment Media, supra*. To satisfy general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state if the defendant has engaged in continuous and systematic general business contacts with the forum state. *Id.* If the defendant's contacts are neither substantial nor continuous and systematic, but the cause of action arises out of or is related to the defendant's contact with the forum, a court may assert specific jurisdiction over the defendant, depending on the quality and nature of such contact. *Id.*

Voss conceded to the trial court that the court did not have general personal jurisdiction over Brown. Similarly, on appeal Brown only argues that there were sufficient minimum contacts between Brown and Nebraska to meet the requirements of specific personal jurisdiction. Accordingly, we only address whether the court had specific personal jurisdiction.

Voss' first three assignments of error relate to the question of whether Brown had sufficient minimum contacts with Nebraska to establish specific personal jurisdiction. She argues that the trial court failed to reference certain contacts in its analysis and determination of whether Brown had sufficient minimum contacts with Nebraska. Specifically, she states that the court's analysis failed to consider the check that Brown had delivered to Voss in Nebraska, Brown's telephone contact with Voss in November 2016 asserting a legal right to Rusty, and Brown's demand letter sent to Voss in Nebraska in late 2016 regarding Rusty. Voss further argues that when all the evidence is considered, Brown's suit-related conduct created a substantial connection to Nebraska sufficient to meet the minimum contacts requirement. She claims that Brown's alleged agreement with Voss, the check he issued to Voss, the demand letter, and the telephone communication between the parties established sufficient minimum contacts with Nebraska.

As the trial court noted in its order, the U.S. Supreme Court explained in *Walden* v. *Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014), that the specific jurisdiction analysis focuses "on the relationship among the defendant, the forum, and the litigation," and "the defendant's suit-related conduct must create a substantial connection with the forum state." The relationship between a defendant and the forum State "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," such as Voss. *Id.* at 285, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (emphasis in original). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden* v. *Fiore*, 571 U.S. at 286, quoting *Burger King Corp. v. Rudzewicz, supra*.

The evidence showed that Brown is a lifelong Kentucky resident. Brown testified that he had never visited Nebraska. There was conflicting testimony as to whether Brown stopped for a visit at Voss' parents' home, but as the trial court found, even if Brown did visit Nebraska, Rusty was not the subject or the reason for his visit. Therefore, the disputed visit was irrelevant to the

- 5 -

determination of personal jurisdiction; the visit was not "suit-related." Brown admitted he had driven through Nebraska on two occasions on his way to another destination, stopping one time at the Cabela's in Sidney and another time at the Cabela's in Kearney. However, his reasons for passing though the State and his stops were unrelated to this case.

Brown has never lived in Nebraska, he has no real estate, bank account, office, or telephone number in Nebraska. He has not derived any income or paid income taxes in Nebraska, has never been licensed to do business in the State, has no employees, and has not solicited or advertised any business in Nebraska.

There was evidence of Brown having contact with Nebraska through telephone calls he made primarily to Kellems when he lived with Voss in Nebraska, and a few calls to Voss and her parents. The majority of these calls were personal in nature, and only a few involved any discussion in regard to Rusty. Brown also had Kellems deliver a check to Voss in Nebraska, and sent Voss a demand letter in Nebraska asking that she return Rusty to him. However, the only connection the calls, check, and letter had to Nebraska was because Voss resided there. A defendant's contacts must be with the forum itself, not simply with persons who happen to reside there. *Walden* v. *Fiore, supra*. In addition, the mere use of interstate facilities, such as telephones, mail, or facsimile machines, is not enough to confer jurisdiction. *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998). However, this does not mean the use of interstate communications may not be considered in the overall analysis. See *id.* Mail and telephone communications sent by the defendant into a forum may count toward the minimum contacts that support jurisdiction. *Id.*

Further, while there is conflicting evidence about the details of the agreement that led to the transfer of Rusty from Brown to Voss, there is no dispute that the discussions and agreement did not occur in Nebraska. In addition, Rusty was delivered to Voss in Kansas, where she was going to school and living at the time.

After considering all the evidence presented to the trial court, we conclude that Brown's contacts with Nebraska were insufficient to meet the minimum contacts required for personal jurisdiction. As the trial court found, the limited contacts Brown had with Nebraska were a result of Voss being located in the state, and were not of the quality or nature necessary for the court to exercise specific personal jurisdiction over Brown. In other words, Brown's contacts were not with Nebraska, but with Voss who happened to reside there. Any suit-related conduct by Brown did not create a substantial connection with Nebraska.

*Fair Play and Substantial Justice.*

Voss next argues that the trial court erred in finding that exercising personal jurisdiction over Brown would offend traditional notions of fair play and substantial justice. Once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. See *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004). Having concluded that Brown did not have the necessary minimum contacts to support the exercise of personal jurisdiction over Brown in Nebraska, we need not determine whether the exercise of personal jurisdiction would comport

with fair play and substantial justice. Accordingly, we do not address Voss' final assignment of error.

CONCLUSION

We conclude that the trial court did not err in finding that the court lacked personal jurisdiction over Brown and, therefore, did not err in granting Brown's motion to dismiss. Accordingly, the order of the district court is affirmed.

AFFIRMED.