NO. COA13-1371

NORTH CAROLINA COURT OF APPEALS

Filed: 29 July 2014

RON D. MEYER,
      Plaintiff-Appellant,

      v.                                  Iredell County
                                          No. 13 CVD 1255
RACE CITY CLASSICS, LLC,
      Defendant-Appellee.


      Appeal by Plaintiff from order entered 21 October 2013 by

Judge H. Thomas Church in District Court, Iredell County.  Heard

in the Court of Appeals 7 April 2014.


      *Pope McMillan Kutteh & Schieck, P.A., by William H.
      McMillan and Matthew J. Pentz, for Plaintiff-Appellant.*

      *Homesley, Gaines & Dudley, LLP, by Edmund L. Gaines and
      Leah Gaines Messick, for Defendant-Appellee.*


      McGEE, Judge.


      Ron D. Meyer ("Plaintiff") saw a 1970 Ford Mustang ("the

car") in an advertisement placed by Race City Classics, LLC,

("Defendant") on the website classiccars.com in July of 2012.

Defendant is a business, located in Iredell County, that

specializes in the consignment and sale of classic cars.

Defendant also placed advertisements on carsforsale.com, on

eBay, and on its own website.  Plaintiff, a resident of

Nebraska, contacted Defendant and, through a series of telephone calls and emails, Plaintiff and Defendant reached an agreement whereby Plaintiff would pay Defendant $21,000.00 to purchase the car. Thomas M. Alphin ("Alphin"), one of Defendant's owners, handled the negotiations for Defendant. Plaintiff wired the full amount of $21,000.00 to Defendant. Plaintiff did not come to North Carolina at any time during the negotiation and purchase transaction. Plaintiff wanted the car shipped to his home in Nebraska, telling Defendant that Plaintiff planned to present the car at vehicle car shows in Nebraska.

Alphin sent Plaintiff an email in which Alphin stated: "I lined up a shipper, and he will give me the price tomorrow." In a subsequent email to Plaintiff, Alphin stated:

> I have the shipping lined up and it is something I can't control. They put it out and have a driver accept the bid and they come and get it. I had it on multiple sites looking for the best quote, and Alpine was the best so I went ahead and booked it for you. I paid $380, so your cost is $345.

The car was delivered to Plaintiff in Nebraska, but Plaintiff was dissatisfied with the condition of the car. Plaintiff requested that Defendant refund the purchase price, but Defendant refused.

Plaintiff filed an action for damages against Defendant in Nebraska state court. Plaintiff contended that, upon receipt of

the car, the "paint on the car was cracked at various spots, the front hood was out of alignment, the trunk could not be opened and the car could not be started." Defendant, after being served with notice of the action, failed to appear to contest Plaintiff's claims and the Nebraska court entered a default judgment against Defendant in the amount of $8,942.30 on 26 February 2013. That was the amount the Nebraska court found necessary to repair the problems alleged by Plaintiff.

Pursuant to N.C. Gen. Stat. § 1C-1703, Plaintiff filed a "Docketing of Foreign Judgment" and the default judgment from the Nebraska state court in Iredell County Superior Court on 30 May 2013. Plaintiff also filed, pursuant to N.C. Gen. Stat. § 1C-1704, a "Notice of Filing Foreign Judgment" on the same day. Pursuant to N.C. Gen. Stat. § 1C-1705(a), Defendant filed a "Motion for Relief Against Foreign Judgment" on 18 June 2013, contending the Nebraska court lacked personal jurisdiction over Defendant. Pursuant to N.C. Gen. Stat. § 1C-1705(b), Plaintiff then filed a "Motion for Enforcement of Foreign Judgment" on 8 July 2013. At a 21 October 2013 hearing, the trial court found Defendant did not have sufficient minimum contacts with the State of Nebraska to confer personal jurisdiction over Defendant to the State of Nebraska. The trial court granted Defendant's "Motion for Relief Against Foreign Judgment" and set aside the

docketing of the State of Nebraska foreign judgment. Plaintiff appeals.

## I. <u>Standard of Review</u>

In questions of personal jurisdiction, this Court "considers only 'whether the findings of fact by the trial court are supported by competent evidence in the record;' . . . we are not free to revisit questions of credibility or weight that have already been decided by the trial court." *Deer Corp v. Carter*, 177 N.C. App. 314, 321, 629 S.E.2d 159, 165 (2006) (citation omitted). "If the findings of fact are supported by competent evidence, we conduct a *de novo* review of the trial court's conclusions of law and determine whether, given the facts found by the trial court, the exercise of personal jurisdiction would violate defendant's due process rights." *Id.* at 321-22, 629 S.E.2d at 165.

## II. <u>Analysis</u>

<u>Defendant's Motion for Relief Against Foreign Judgment</u>

Plaintiff argues that the trial court erred in granting Defendant's motion for relief from the Nebraska foreign judgment because Nebraska courts had personal jurisdiction over Defendant for the cause of action arising out of the sale of the car.

> Generally, one state must accord full faith
> and credit to a judgment rendered in another
> state. However, because a foreign state's
> judgment is entitled to only the same

> validity and effect in a sister state as it had in the rendering state, the foreign judgment must satisfy the requisites of a valid judgment under the laws of the rendering state before it will be afforded full faith and credit.
>
> To meet the requirements of a valid judgment, the rendering court must comport with the demands of due process such that it has personal jurisdiction — otherwise known as minimum contacts — over defendant. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 90 L. Ed. 95 (1945). The Due Process Clause protects an individual's liberty interest in not being subject to the judgment of a forum with which he has established no meaningful contacts or relations. *Id*. "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490 (1980). N.C. Gen. Stat. § 1A-1, Rule 60(b)(4) allows a party to petition for relief from judgment on the grounds that the judgment is void. A void judgment is a legal nullity which may be attacked at any time.

*Bell Atl. Tricon Leasing Corp. v. Johnnie's Garbage Serv., Inc.*, 113 N.C. App. 476, 478-79, 439 S.E.2d 221, 223-24 (1994) (some citations omitted). This Court has held that, in actions to enforce a foreign judgment, the burden of proof on the issue of full faith and credit is on the judgment creditor. *Lust v. Fountain of Life, Inc.*, 110 N.C. App. 298, 300, 429 S.E.2d 435, 438 (1993). The introduction into evidence of a copy of the foreign judgment, authenticated pursuant to N.C. Gen. Stat. §

1A-1, Rule 44, establishes a presumption that the judgment is entitled to full faith and credit. *Lust*, 110 N.C. App. 298 at 301, 429 S.E.2d 435 at 437 (citing *Thrasher v. Thrasher*, 4 N.C. App. 534, 540, 167 S.E.2d, 397, 400 (1967)). "This presumption can be rebutted by the judgment debtor upon a showing that the rendering court . . . did not have jurisdiction over the parties[.]" *Id.*

In the present case, Plaintiff filed an authenticated judgment in the Office of the Clerk of Superior Court of Iredell County. Therefore, Defendant, as the judgment debtor, had the burden of presenting evidence to rebut the presumption that the judgment was valid. We agree with Plaintiff that Defendant has not done so.

Nebraska courts perform a two-step analysis when determining whether a state court's exercise of personal jurisdiction over a defendant is constitutional. *Quality Pork Intern. v. Rupari Food Services, Inc.*, 267 Neb. 474, 480, 675 N.W.2d 642, 649 (2004). First, Nebraska's long-arm statute must authorize the exercise of personal jurisdiction over a defendant. *Id.* Second, the trial court must consider whether minimum contacts exist between the defendant and the forum state and whether such personal jurisdiction may be exercised over the defendant without offending constitutional due process. *Id.*

In the present case, this Court must determine whether Nebraska's long-arm statute authorized personal jurisdiction over Defendant. Neb. Rev. Stat. § 25-536 (1983) reads:

> A court may exercise personal jurisdiction over a person:
>
> (1) Who acts directly or by an agent, as to a cause of action arising from the person:
>
> (a) Transacting any business in this state;
>
> (b) Contracting to supply services or things in this state;
>
> (c) Causing tortious injury by an act or omission in this state;
>
> (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
>
> (e) Having an interest in, using, or possessing real property in this state; or
>
> (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
>
> (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Subsection (2) of the above statute "expressly extends Nebraska's jurisdiction over nonresidents as far as the U.S. Constitution permits." *Crete Carrier Corp. v. Red Food Stores,*

*Inc.*, 254 Neb. 323, 328, 576 N.W.2d 760, 764 (1998) (citing *Castle Rose v. Philadelphia Bar & Grill,* 254 Neb. 299, 576 N.W.2d 192 (1998)).  Therefore, we need only address whether Defendant had such minimum contacts with Nebraska that the exercise of personal jurisdiction would not offend federal constitutional principles of due process. *Id*.  Depending on the quality and nature of Defendant's contacts with Nebraska, Nebraska's courts may have either general or specific personal jurisdiction over Defendant.  *Quality Pork*, 267 Neb. at 482-83, 675 N.W.2d at 650.

Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)). The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  *Burger King* v. Rudzewicz 471 U.S. 462, 472, 85 L. Ed. 2d 528, 540 (1985) (*citing World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980)).

In *Burger King*, the United States Supreme Court further held that individuals have fair warning that a particular activity may subject them to a foreign state's specific jurisdiction if the defendant had "purposefully directed" his activities at residents of the forum, and the litigation resulted from alleged injuries that "ar[ose] out of or relate[d] to" those activities. *Burger King*, 471 U.S. at 472, 85 L. Ed. 2d at 540-41 (citations omitted). Even when the cause of action does not arise out of or relate to a defendant's activities in the forum state, the state may exercise general jurisdiction over the defendant when there are sufficiently continuous and systematic contacts between the state and the defendant. *Helicopteros Nacionales De Columbia v. Hall*, 466 U.S. 408, 414-15, 80 L. Ed. 2d 404, 411-12.

Defendant argues that sufficient minimum contacts do not exist for Nebraska state courts to exercise general personal jurisdiction over him because "[t]he sale to this Nebraska resident happened one time, and did not create any sort of systematic or continuous relationship with the state." We agree that Defendant's conduct in this instance was insufficient to

allow Nebraska to obtain general personal jurisdiction over Defendant.

However, the cause of action arose out of Defendant's contact with Nebraska, and we hold that the quality and nature of Defendant's contacts were such that the contacts conferred specific personal jurisdiction over Defendant in Nebraska state courts. Plaintiff first saw the car indirectly through an advertisement Defendant placed on classiccars.com, and Plaintiff and Defendant entered into extensive negotiations for the car immediately after Plaintiff contacted Defendant on 15 July 2012. The negotiations lasted for three days and took place through a series of telephone calls and emails. During these discussions, Alphin told Plaintiff, both verbally and in emails, that everything in the car worked as it should, and that the car "sounded and drove great." Plaintiff told Alphin that Plaintiff intended to present the car at car shows in Nebraska. Plaintiff and Defendant agreed to split the cost of shipment of the car. Plaintiff and Alphin now disagree as to who was responsible for hiring the shipping company. Plaintiff contends that pursuant to agreement of the parties, Alphin handled all the shipping logistics. The emails in the record indicate that Alphin handled the logistics of the car's shipment. Defendant accepted

the wire transfer of $21,000.00 from Plaintiff, who resided in Nebraska, as payment for the car.

It logically follows that Alphin knew that if Plaintiff's ability to use and enjoy the car was impaired, such impairment would likely occur in Nebraska. By directing these activities towards Nebraska, Defendant could reasonably have anticipated being haled into court in Nebraska if the car was defective and the quality was less than represented by Defendant. *World-Wide*, 444 U.S. at 297, 62 L. Ed. 2d. at 501.

Furthermore, a single contract is a sufficient contact for due process purposes, even if the defendant has not physically entered the forum state, as long as the contract has a substantial connection to the forum state. *McGee v. Int'l Life Insurance Co.*, 355 U.S. 220, 223, 2 L. Ed. 223, 226 (1957). In *McGee*, a single life insurance contract was sufficient to confer personal jurisdiction over the defendant in California, despite the fact that the defendant had no other contracts in California, did not market its services there, and never had its agents physically enter the state in the course of their employment. *McGee*, 355 U.S. at 222, 2 L. Ed. at 225.

The North Carolina Supreme Court followed this rule in *Williamson Produce, Inc. v. J.H. Satcher, Jr.*, holding: "When a contract bears a substantial connection to the forum state, a

defendant who enters into that contract 'can reasonably anticipate being haled into court . . .' in the forum state." *Williamson Produce, Inc. v. J.H. Satcher, Jr.*, 122 N.C. App. 589, 594, 471 S.E.2d 96, 99 (1996) (citations omitted). In *Williamson Produce*, the plaintiff initiated negotiations in South Carolina with the defendant, a South Carolina peach farmer. *Id*. at 589, 471 S.E.2d at 97. The plaintiff travelled to South Carolina, where the plaintiff finalized a contract with the defendant to sell the defendant's peaches in North Carolina. *Id*. at 590, 471 S.E.2d at 96. When the defendant breached the contract, the plaintiff sued the defendant in North Carolina. *Id*. at 591, 471 S.E.2d at 97. Since the defendant contracted with the plaintiff to have his peaches sold in North Carolina, the contract bore a substantial connection to North Carolina and the defendant "should not be surprised with being haled into a North Carolina court." *Id*. at 594, 471 S.E.2d at 99 (citation omitted).

In the present case, Plaintiff initiated the negotiations with Defendant for the purchase of the car. Defendant did not physically enter Nebraska, but it contracted with Plaintiff, a Nebraska resident, to sell the car to Plaintiff and have it shipped to Plaintiff's residence in Nebraska. Payment for the car was sent from Plaintiff in Nebraska. Defendant knew

Plaintiff intended to show the car at car shows in Nebraska. These aspects of the contract show that the contract had a substantial connection to Nebraska. Therefore, Defendant should not be surprised to have been haled into a Nebraska court when Plaintiff alleged the car was not as Defendant had represented. Defendant's constitutional right to due process was not violated by Plaintiff's action having been initiated in Nebraska.

Defendant argues that because he was never physically in Nebraska, never paid a sales tax in Nebraska, never attended meetings in Nebraska, and never purchased a car in Nebraska, the Nebraska state court lacked personal jurisdiction over him. However, in the above mentioned *McGee* case, the defendant did not physically enter the forum state, did not advertise directly to residents of the forum state, nor did it have any other contracts with residents of the forum state. *McGee*, 355 U.S. at 222, 2 L. Ed. at 225. Yet the forum state's exercise of personal jurisdiction over the defendant in *McGee* was upheld as constitutional. *Id*.

In *Quality Pork*, the Nebraska Supreme Court found that personal jurisdiction existed over Rupari Food Services, Inc. ("Rupari"), a Florida corporation, despite the fact that Rupari had never made any sales into or directly to the State of Nebraska and none of its employees or officers had ever visited

Nebraska in the course of their employment with Rupari. *Quality Pork*, 267 Neb. at 478, 675 N.W.2d at 647. Rupari had contracted to pay for three shipments of Quality Pork's products to Star Food Processing, Inc., a Texas corporation. *Id*. at 477, 675 N.W.2d at 646. Rupari failed to pay for one of the orders, and Quality Pork, a Nebraska corporation, filed an action in Nebraska state court to recover the cost of the third order. *Id*. at 477, 675 N.W.2d at 647.

In its conclusion in *Quality Pork*, the Nebraska Supreme Court stated:

> Quality Pork's claim arose out of Rupari's contacts with a company located in Nebraska. Therefore, in evaluating whether the exercise of specific personal jurisdiction is reasonable, we conclude that it would not be unduly burdensome for Rupari to defend an action in Nebraska. Quality Pork had a valid interest in obtaining convenient and effective relief which supported the bringing of its action in this state. By purposefully conducting business with Quality Pork, Rupari could reasonably anticipate that it might be sued in Nebraska if it failed to pay for products ordered from Quality Pork.

*Id*. at 484-85, 675 N.W.2d at 652.

Similarly, in the present case, Defendant could reasonably anticipate being sued in Nebraska if the car Defendant delivered to Plaintiff was alleged to be not of the quality represented by Defendant to Plaintiff. Plaintiff had a valid interest in

obtaining convenient and effective relief, and Defendant presented no evidence to show that defending the lawsuit in Nebraska would be unduly burdensome or that doing so would violate notions of fair play and substantial justice. *Internat. Shoe*, 326 U.S. at 316, 90 L. Ed. at 102.

Finally, case law from this Court, on enforcement of foreign judgments, supports a finding that Nebraska state courts have personal jurisdiction over Defendant. In *Automotive Restyling Concepts, Inc. v. Central Service Lincoln Mercury, Inc.*, Automotive Restyling Concepts, Inc. ("Automotive"), a Virginia corporation, contracted with Central Service Lincoln Mercury ("Central"), a North Carolina corporation, to restyle four of Central's used cars on Automotive's Virginia premises. *Automotive Restyling Concepts Inc. v. Central Service Lincoln Mercury, Inc.*, 92 N.C. App. 372, 373, 374 S.E.2d 399, 400 (1988). The contract was negotiated and agreed to in North Carolina. *Id*. One of Automotive's employees came to North Carolina and transported the cars to Virginia. *Id*. The cars were restyled in Virginia, but Central was dissatisfied and refused to pay its bill. *Id*. at 374, 374 S.E.2d at 400.

Automotive sued Central in Virginia state court, and a default judgment was entered against Central. *Id*. Automotive filed the judgment in a North Carolina district court, which

upheld the judgment. *Id*. Our Court stated that, for a foreign judgment against a nonresident to be valid, the trial court must be authorized by statute to exercise jurisdiction over the nonresident defendant, and the exercise of jurisdiction must be in accord with the constitutional limits of due process. *Id*. This Court affirmed the trial court's order, holding that the requirements for jurisdiction in Virginia had been met. *Id*. This Court concluded: "Having voluntarily availed itself of the privilege of having its cars improved and restyled in Virginia, that state's enforcement of defendant's obligation to pay for the services so obtained was to be expected." *Id*. at 375, 374 S.E.2d at 401; *see also Security Credit Leasing, Inc. v. D.J.'s of Salisbury, Inc.*, 140 N.C. App. 521, 537 S.E.2d 227 (2000).

Defendant argues the present case is different from *Automotive Restyling* because less of the contract in this case was performed in the foreign state than in *Automotive Restyling*. We find that argument unpersuasive. In both cases, the defendant did not physically enter the state in which judgment was entered. Each contract was fulfilled in the state foreign to each defendant. In *Automotive Restyling*, the contract was fulfilled by the restyling of the four cars in Virginia. In the present case, the contract was fulfilled by the delivery of the car to Plaintiff in Nebraska.

We hold that the trial court in Nebraska properly exercised personal jurisdiction over Defendant. Defendant intentionally directed its actions towards Nebraska through: (1) advertising its cars on websites accessible to Nebraskans, (2) its contract negotiations with Plaintiff, (3) receiving Plaintiff's payment from Nebraska, and (4) shipment of the car to Plaintiff in Nebraska. Plaintiff's inability to use and enjoy the car resulted from Defendant's contacts with Nebraska. It was foreseeable that any hindrance to Plaintiff's use and enjoyment of the car caused by Defendant's misrepresentations would occur in Nebraska. As such, Defendant could reasonably have anticipated being haled into court in Nebraska. Defendant did not show that defending the suit in Nebraska would have been unduly burdensome to the extent that it would offend notions of fair play and substantial justice. We hold that the foreign judgment from the Nebraska state court is valid and enforceable in North Carolina.

Reversed and remanded.

Chief Judge MARTIN and Judge CALABRIA concur.