KUGLER COMPANY, A NEBRASKA CORPORATION, APPELLANT, v. GROWTH PRODUCTS LTD., INC., A NEW YORK CORPORATION, APPELLEE.

658 N.W.2d 40

Filed March 14, 2003.   No. S-02-099.

R. Kevin O'Donnell and Charles J. Stolz, of McGinley, O'Donnell, Reynolds & Edwards, P.C., for appellant.

Edward F. Noethe, of McGinn, McGinn, Jennings & Springer, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Kugler Company, filed a petition against the appellee, Growth Products Ltd., Inc., alleging breach of contract and breach of express and implied warranties. The district court determined that it lacked personal jurisdiction over Growth Products, sustained its special appearance, and dismissed the petition. Kugler appeals. Because Growth Products had an ongoing relationship with Kugler and encouraged Kugler to distribute its products in Nebraska, we reverse, and remand for further proceedings.

## BACKGROUND

Kugler is a company located in McCook, Nebraska. Growth Products is a New York corporation with its principal place of business in New York. Growth Products does not own property in Nebraska and does not maintain a Nebraska office.

In 1992, an employee of Kugler became aware of Growth Products from an advertisement in a trade journal that Kugler subscribed to. According to Kugler, the employee contacted Growth Products by telephone and then began to receive regular telephone contact from Growth Products. Between 1992 and 1999, Kugler purchased about 399 tons of nitrogen products from Growth Products at an approximate cost of $179,472. The product at issue was manufactured for Growth Products by a company in Wisconsin; Kugler went to Wisconsin to pick up the product.

In 1995, Clare H. Reinbergen, the president of Growth Products, wrote a letter expressing a desire to arrange a visit with the president of Kugler. In August 1996, Reinbergen wrote a letter to Kugler about meeting to discuss opportunities involving the distribution of products supplied by Growth Products. The letter described Growth Products' intention to enter the "ag market and begin advertising in trade magazines such as 'Ag Retailer' and 'Farm Chemicals.' " Growth Products stated that it would also be represented at trade shows.

In March 1997, Reinbergen sent a letter to Kugler congratulating it on becoming an assigned distributor. The letter stated that representatives of Growth Products would visit Kugler's location. It described ways the representatives would assist Kugler in distributing its products. Another 1997 letter from Growth Products stated, "It is our goal to continue to grow this relationship and business together, expanding and reaching new levels of profitability." The letter enclosed a distributor handbook entitled "Partners in Success," which Growth Products described as a "full support program." The handbook described Growth Products' expectations of its distributors, which included (1) the maintenance of an adequate inventory investment in its products, (2) a minimum sales requirement, and (3) an expectation that the distributor would participate in joint marketing efforts and invite Growth Products' participation in sales and promotional opportunities.

Growth Products described in its handbook how it would support the distributor, including (1) the assignment of a technical sales representative to the distributor, (2) the expectation of a yearly management meeting to plan goals and tactics, (3) the sponsorship of training seminars, and (4) the provision of a cooperative advertising allowance and promotional materials. Growth Products stated that it would pay for the distributor's first advertisement and could provide predesigned advertisements. It also provided incentives for the distributor to advertise by giving monetary credits for using a Growth Products' registered trademark or clip art in local advertising materials or catalogs. Growth Products offered to help pay for the printing of newsletters that featured its products and stated that it would help write the copy. The handbook included an order form to order more handbooks for sales

representatives. The handbook also contained a 1997 advertising schedule showing that between January and September, advertisements would be placed in "Golf Course Management Magazine," "Turf Magazine," and "Arbor Age."

According to Kugler's marketing manager, Ron Soden, Reinbergen held a sales meeting at the Kugler headquarters in 1996. After the meeting, either Reinbergen or her assistant began to contact Soden by telephone a couple of times a month to solicit sales for their products. Growth Products also sent Soden a comprehensive sales handbook which included the "Partners in Success" materials, product information, and promotional materials.

In 1998, the Van Diest Company of McCook began having problems with a Growth Products nitrogen product that it had purchased from Kugler. Growth Products visited the Van Diest office and later began soliciting the company directly by telephone for sales of their products. Reinbergen then sent a letter to Van Diest inviting it to participate in Growth Products' 1999 incentive program and explaining that participation would allow Van Diest to begin to work its way up to distributor status.

The record contains an affidavit from Reinbergen stating that Growth Products has never solicited or conducted business in Nebraska or advertised for business in Nebraska. According to Reinbergen, Growth Products has never derived substantial revenue from goods used in Nebraska.

Kugler filed a petition alleging that in 1999, it purchased two shipments of "Nitro-30" from Growth Products for $25,809.03. Kugler alleged that the Nitro-30 was defective and that Growth Products refused to issue a refund. According to Kugler, it incurred additional damages of about $16,868 because it had to clean tanks and dispose of the product. In her affidavit, Reinbergen states that a Kugler employee called Growth Products to place the orders for the Nitro-30.

Growth Products filed a special appearance, objecting to personal jurisdiction. Relying primarily on *Dunham v. Hunt Midwest Entertainment*, 2 Neb. App. 969, 520 N.W.2d 216 (1994), the court found that Growth Products did not purposely direct activities at the state and that the claim did not arise out of any forum-related activities. Thus, the court determined that Growth

Products lacked sufficient minimum contacts with Nebraska to establish personal jurisdiction and that exercising jurisdiction over Growth Products would not comport with fair play and substantial justice. The court sustained the special appearance and dismissed the petition. Kugler appeals.

## ASSIGNMENT OF ERROR

Kugler assigns, rephrased, that the district court erred by sustaining the special appearance.

## STANDARD OF REVIEW

■ When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999).

## ANALYSIS

Kugler contends that Growth Products had sufficient contacts with Nebraska for the court to assert personal jurisdiction over it. Kugler argues that Growth Products' communications with Kugler to solicit sales and visits by representatives of Growth Products should be considered in determining whether Kugler had sufficient minimum contacts with Nebraska. Kugler also notes that Growth Products advertised in several magazines with national circulation. Growth Products argues, however, that it has no physical presence in Nebraska and that the sales in Nebraska were initiated by Kugler. Growth Products further contends that there are insufficient minimum contacts because the product at issue was manufactured in Wisconsin and because Kugler went there to pick it up.

■ Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. *Holste v. Burlington*

*Northern RR. Co., supra*; *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998).

Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 1995), provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;
. . . .

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

[3] Under § 25-536(1)(a) and (b), Growth Products is subject to the terms of the long-arm statute. Further, § 25-536(2) expressly extends Nebraska's jurisdiction over nonresidents to the extent the U.S. Constitution permits. *Crete Carrier Corp. v. Red Food Stores, supra*. Thus, we next address whether Growth Products had such contacts with Nebraska that the exercise of personal jurisdiction would not offend federal constitutional principles of due process.

[4,5] The Due Process Clause of the U.S. Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Crete Carrier Corp. v. Red Food Stores, supra*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). To subject an out-of-state defendant to personal jurisdiction in a forum court, due process requires that the defendant have certain minimum contacts with the forum state so as not to offend " 'traditional notions of fair play and substantial justice.' " *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed 95 (1945); *Crete Carrier Corp. v. Red Food Stores, supra*. Thus, the determination whether the court has jurisdiction is a two-step process. First, we determine whether Growth Products had the necessary minimum contacts with Nebraska; second, if such minimum contacts have been established, the contacts may be considered in light of other factors to determine whether the

512

assertion of personal jurisdiction would comport with fair play and substantial justice. See *Crete Carrier Corp. v. Red Food Stores, supra.*

### MINIMUM CONTACTS

The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Id.* This analysis requires that we consider the quality and nature of the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process. *Internat. Shoe Co. v. Washington, supra; Crete Carrier Corp. v. Red Food Stores, supra; Williams v. Gould, Inc.,* 232 Neb. 862, 443 N.W.2d 577 (1989).

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Crete Carrier Corp. v. Red Food Stores,* 254 Neb. 323, 576 N.W.2d 760 (1998). Rather, it is essential in each case that there be some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* This requirement ensures that a defendant will not be subject to litigation in a jurisdiction solely due to random, fortuitous, or attenuated contacts. *Id.*

Due process, however, does not require a defendant's physical presence in the forum before personal jurisdiction is exercised. *Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992); *Crete Carrier Corp. v. Red Food Stores, supra.* Also, the existence of a contract with a party in a forum state or the mere use of interstate facilities, such as telephones and mail, does not, in and of itself, provide the necessary contacts for personal jurisdiction. *Crete Carrier Corp. v. Red Food Stores, supra.* But this does not mean that the existence of a contract and the use of interstate communications may not be considered in the overall analysis. *Id.* We will also consider the prior negotiations between the parties and contemplated consequences. See, *id.; Williams v. Gould Inc., supra.* Further, if a substantial connection is created, even a single

contact can support jurisdiction. See *Crete Carrier Corp. v. Red Food Stores, supra.*

Parties who " ' "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.' " *McGowan Grain v. Sanburg*, 225 Neb. 129, 138, 403 N.W.2d 340, 347 (1987), quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Here, it is clear that there was an ongoing relationship between Kugler and Growth Products that was intended to market products sold under the Growth Products label in Nebraska. The record contains the statements of Kugler employees that Growth Products called them to solicit sales. This assertion is corroborated by written communications from Reinbergen seeking to set up a meeting and stating a goal to continue to grow the relationship between the companies and reach new levels of profitability. Reinbergen also visited Nebraska to hold a sales meeting. Kugler became an assigned distributor for Growth Products and was offered assistance from Growth Products for the marketing of its products. Over a period of years, Kugler purchased 399 tons of products from Growth Products. Growth Products then later solicited another Nebraska company to distribute its products. Here, we are not dealing with an isolated sale to a Nebraska citizen. Instead, the record shows numerous transactions with the intent to distribute and sell the products to Nebraska citizens.

Growth Products argues that because the product was manufactured for Growth Products by a Wisconsin company and that Kugler picked up the product in Wisconsin, it lacked direct contact with Nebraska. Here, taking delivery in Wisconsin is not significant. The product was sold to Kugler by Growth Products, and Kugler was Growth Products' assigned distributor of the products in Nebraska. The record shows that Growth Products encouraged Kugler's efforts to distribute its products in Nebraska and gave assistance that would help serve its market in Nebraska.

Growth Products also argues that *Dunham v. Hunt Midwest Entertainment*, 2 Neb. App. 969, 520 N.W.2d 216 (1994), dictates a different result. We disagree. In *Dunham*, the Nebraska Court of Appeals determined that there were insufficient minimum

514

contacts to establish personal ·jurisdiction when a Missouri amusement park placed numerous advertisements in Nebraska and sold tickets in Nebraska. But unlike *Dunham*, where the contacts were aimed at enticing people to leave Nebraska to visit a location in Missouri, Growth Products advertised products that would be purchased for use or resale in Nebraska. Further, by making Kugler an assigned distributor, Growth Products actively encouraged the sales of products in Nebraska. Thus, *Dunham* is inapplicable to this case. We conclude that the court was incorrect as a matter of law when it determined that the claim did not arise out of any forum-related activities and that Growth Products had insufficient minimum contacts with Nebraska to satisfy due process. To the extent the court made a finding of fact that Growth Products never purposely directed activities at Nebraska, we conclude that the district court was clearly wrong.

FAIR PLAY AND SUBSTANTIAL JUSTICE

We next weigh the facts to determine whether the exercise of personal jurisdiction would comport with " 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998). In doing so, we may consider (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King Corp. v. Rudzewicz, supra*; *Crete Carrier Corp. v. Red Food Stores, supra*. In addition, when, as here, a defendant who purposefully has directed his or her activities at forum residents seeks to defeat jurisdiction, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.*

With the increasing nationalization of commerce and the ease of modern communication, defense of an action is less burdensome in a state where he or she engages in economic activity. We

recognized as early as 1987 a discernible trend toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. *McGowan Grain, Inc. v. Sanburg*, 225 Neb. 129, 403 N.W.2d 340 (1987).

Here, the court did not find that it would be burdensome on Growth Products to litigate the action in Nebraska. In addition, Growth Products has not presented evidence of any "other considerations" affecting fair play and substantial justice that would weigh against an exercise of personal jurisdiction over it. Growth Products has failed to show that an exercise of jurisdiction over it would offend notions of fair play and substantial justice.

## CONCLUSION

We conclude that by soliciting sales from Kugler, holding a sales meeting in Nebraska, creating a distributorship relationship with Kugler, and encouraging the sale of its products in Nebraska, Growth Products had sufficient minimum contacts to establish personal jurisdiction. Growth Products has not shown that any other considerations apply that would weigh against an exercise of jurisdiction. Accordingly, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.