Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/29/2018 09:08 AM CDT

- 928 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

Roth Grading, Inc., doing business as Impact
Roller Technology, a Nebraska corporation,
appellant, v. Martin Brothers Construction,
a California corporation, appellee.

___ N.W.2d ___

Filed May 29, 2018.    No. A-17-097.

1. **Motions to Dismiss: Jurisdiction: Pleadings.** When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion.
2. **Jurisdiction: Rules of the Supreme Court: Pleadings: Appeal and Error.** When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.
3. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.
4. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions.
5. **Constitutional Law: Jurisdiction: Due Process: Service of Process: States.** The Due Process Clause of the 14th Amendment to the U.S. Constitution bars a court from exercising personal jurisdiction over an out-of-state defendant, served with process outside the state, unless that defendant has sufficient ties to the forum state.
6. **Constitutional Law: Jurisdiction: Statutes: Due Process: States.** A two-step analysis is used to determine whether a Nebraska court may validly exercise personal jurisdiction over an out-of-state defendant. First, a court must consider whether Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), authorizes the exercise of personal

- 929 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

jurisdiction over the defendant. Second, a court must consider whether the exercise of personal jurisdiction over the defendant comports with due process.

7. **Constitutional Law: Jurisdiction: Statutes: Due Process.** If a Nebraska court's exercise of personal jurisdiction would comport with the Due Process Clause of the 14th Amendment, it is authorized by the long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016).

8. **Constitutional Law: Jurisdiction: Due Process: States: Words and Phrases.** To satisfy the Due Process Clause, a court may only exercise personal jurisdiction over a defendant that is not present in the forum state if that defendant has minimum contacts with the forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. To constitute sufficient minimum contacts with the forum, the defendant's conduct and connection with the forum state must be such that he or she should reasonably anticipate being haled into court there.

9. **Jurisdiction: States.** Whether a defendant's contacts with the forum state are sufficient to support the exercise of personal jurisdiction will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

10. ____: ____. Personal jurisdiction is proper where the defendant's contacts proximately result from actions by the defendant himself or herself that create a substantial connection with the forum state.

11. **Jurisdiction: States: Words and Phrases.** General, or all-purpose, jurisdiction arises where a defendant's affiliations with the forum state are continuous and systematic.

12. **Jurisdiction: Words and Phrases.** Specific, or case-linked, jurisdiction requires that a claim arise out of or relate to the defendant's contacts with the forum.

13. ____: ____. With regard to specific personal jurisdiction, there must be a substantial connection between the defendant's contacts and the operative facts of the litigation.

14. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.

15. **Due Process: Jurisdiction: States.** The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are

- 930 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

such that the defendant should reasonably anticipate being haled into court there.

16. **Jurisdiction: States.** Whether a defendant's contacts with the forum state are sufficient to support the exercise of personal jurisdiction will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

17. ____: ____. Personal jurisdiction is proper where the defendant's contacts proximately result from actions by the defendant himself or herself that create a substantial connection with the forum state.

18. **Jurisdiction: States: Contracts: Parties.** To determine whether a defendant's contract supplies the contacts necessary for personal jurisdiction in a forum state, a court is to consider the parties' prior negotiations and future contemplated consequences, along with the terms of the contract and the parties' actual course of dealing.

19. **Jurisdiction: Contracts: States.** The existence of a contract with a party in a forum state or the mere use of interstate facilities, such as telephones and mail, does not, in and of itself, provide the necessary contacts for personal jurisdiction.

20. ____: ____: ____. The existence of a contract and the use of interstate communications may be considered in an overall personal jurisdiction analysis.

21. **Jurisdiction: Parties.** When considering the issue of personal jurisdiction, a court will consider the prior negotiations between the parties and contemplated consequences, and if a substantial connection is created, even a single contact can support jurisdiction.

22. **Jurisdiction.** An ongoing relationship, by itself, is not sufficient to establish personal jurisdiction.

23. **Jurisdiction: States.** In analyzing personal jurisdiction, a court must first establish whether there are necessary minimum contacts with Nebraska, and then, if such minimum contacts have been established, the contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.

Appeal from the District Court for Cass County: Paul W. Korslund, Judge, Retired. Affirmed.

Aaron F. Smeall, of Smith, Slusky, Pohren & Rogers, L.L.P., for appellant.

- 931 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

Patrick T. Vint and Todd W. Weidemann, of Woods & Aitken, L.L.P., for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Bishop, Judge.

## INTRODUCTION

Roth Grading, Inc., a Nebraska corporation doing business as Impact Roller Technology (IRT), agreed to sell equipment to Martin Brothers Construction (Martin Brothers), a California corporation. After Martin Brothers refused to take delivery of the equipment, IRT brought a breach of contract action against Martin Brothers in the district court for Cass County. IRT appeals from the district court's dismissal of the action for lack of personal jurisdiction. We affirm.

## BACKGROUND

Martin Brothers' motion to dismiss for lack of personal jurisdiction was considered on the pleadings filed and the affidavits submitted to the district court; they provide the following facts: IRT is a Nebraska corporation, with a principal place of business in Plattsmouth, Nebraska. Martin Brothers is a California corporation, with a principal place of business in Sacramento, California. IRT's principal product is the "Impactor," a heavy piece of equipment which employs a large rotating drum to "break concrete, perform soil compaction, and perform similar tasks for contractors in the construction and mining industries." On July 29, 2016, IRT received an information request on its website from Felipe Martin, the president of Martin Brothers.

Scott Roth, the president of IRT, spoke with Martin via telephone on August 1, 2016. Martin informed Roth he was interested in purchasing one of IRT's Impactors, but wanted to make sure it could be on site for a project by August 17. Roth assured Martin an Impactor was available and could be delivered. Roth and Martin discussed having a "price quote" emailed to Martin Brothers, and Roth emailed a quote for

- 932 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

$143,400 that same day. This was a discounted purchase price of $138,600, plus $4,800 for shipping from Plattsmouth to Sacramento.

Subsequent conversations took place, but specific dates are not provided. In one conversation, Martin informed Roth he wanted to get a freight price from his own trucking company to see if he could save on the $4,800 shipping price quoted. Greg Aguilera, equipment manager for Martin Brothers, called Roth and asked for the shipping specifications. In a subsequent call, Aguilera informed Roth that Martin Brothers could save $1,000 on shipping with their own trucking company. The parties eventually agreed that IRT would ship the Impactor, but would discount the shipping cost by $1,000. Aguilera and Roth also discussed Martin Brothers' obtaining a tractor to pull the Impactor. In a subsequent call, Aguilera informed Roth that he had found a tractor that could be rented for $2,500 per month and that "he was happy with that price." Aguilera also advised that Martin Brothers had an equipment leasing company that might be able to rent out the Impactor to other parties in the future.

On August 5, 2016, Roth emailed to Martin Brothers a "Contract Purchase Order," which reflected the $1,000 shipping discount, and was signed by Roth on that date. A project engineer at Martin Brothers subsequently called Roth and advised him that Martin Brothers was signing the purchase contract and that he wanted to know if it could be emailed back to the same email address that was used to send it. Roth advised the project engineer that emailing the signed purchase contract back to the same email address would be fine, and he thanked him for the business.

On August 9, 2016, the project engineer emailed back the purchase contract, signed by Martin as president of Martin Brothers and hand dated August 9. The email stated, "'[Roth], See attached signed purchase order for the Impactor 3000h. Let me know if you need anything else.'" The ".pdf file" attached to the August 9 email contained the "IRT Contract Purchase

Order" signed by both parties. It also included, after the signed purchase contract, an unsigned and untitled document. The email did not reference the document that appeared after the signed purchase contract.

While IRT was making preparations to ship the Impactor, Roth received a call from Martin on August 16, 2016, in which Martin stated that "Martin Brothers no longer wanted an Impactor, citing some difficulties with their current project." Roth advised Martin that they already had a signed contract. On August 22, Roth sent an email to Martin "expressing concern that Martin Brothers was refusing to take delivery, and advising that IRT would consider that a breach of the parties' contract." Martin responded by email the next day, claiming that "they had never received a copy of the purchase order executed by Roth" and that "pursuant to their prior conversation, they had 'cancelled the order.'" A few hours later, Martin sent another email stating that "although he did now see that Roth had signed the purchase order, that there was a provision in the (unsigned) Martin Brothers document appended to the .pdf file with the signed contract that allowed Martin Brothers to 'terminate' the purchase because the Impactor had never been shipped." Roth emailed Martin Brothers stating that IRT had never agreed to any cancellation of the order and "would consider that a breach of contract." In-house counsel for Martin Brothers subsequently sent Roth a letter informing him that Martin Brothers was refusing to take delivery and that it was permitted to do so pursuant to the terms of the parties' agreement.

IRT filed a complaint against Martin Brothers on October 6, 2016, alleging breach of contract. On November 10, Martin Brothers filed a motion to dismiss for lack of personal jurisdiction pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(2). Martin Brothers alleged the following: It was a California corporation "with no continued or systemic presence in Nebraska"; it had no continuing relationships or obligations with citizens of Nebraska which would make it subject to regulation

- 934 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

and sanction by Nebraska; the transaction, to its knowledge, was the only transaction Martin Brothers conducted with a Nebraska resident; its sole contact with Nebraska was contacting IRT to purchase a piece of equipment that was already built; and therefore, its brief and cursory contact is "insufficient to meet the standard of minimum contacts necessary so as not to offend traditional notions of fair play and substantial justice necessary to preserve the constitutional right to due process."

Counsel appeared in court on November 28, 2016. Martin Brothers offered, and the court received, exhibit 1, the affidavit of the general counsel for the corporation. He averred that Martin Brothers does not hold, nor ever sought, a license to conduct business in Nebraska; owns no real estate, operates no office, and maintains no physical presence in Nebraska; and is engaged in no sustained or ongoing business transactions in Nebraska. IRT offered, and the court received, exhibit 2, the affidavit of Roth. Roth's affidavit contained the allegations set forth in its complaint, with the facts as noted above.

The district court sustained Martin Brothers' motion to dismiss in an order entered on December 30, 2016. The court concluded that "[m]erely contracting with a resident of Nebraska is insufficient to provide the requisite contact to confer personal jurisdiction." The court further stated that "there is no underlying business relationship, only a series of communications resulting in a single transaction." The court found that it was "significant that Martin Brothers contacted IRT based on IRT's internet advertising, and therefore IRT was the 'aggressor' in the transaction." The court found that "[t]here is no relationship between the parties other than the single contract involved in this case" and that the "only basis for jurisdiction is the series of communications from outside Nebraska based on IRT's internet posting." Accordingly, the court found there was "an insufficient basis for exercise of the long-arm statute in this case." IRT appeals.

## ASSIGNMENT OF ERROR

IRT assigns that the district court erred by granting Martin Brothers' motion to dismiss.

## STANDARD OF REVIEW

[1] When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014).

[2,3] When reviewing an order dismissing a party from a case for lack of personal jurisdiction under § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018). In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Id.*

## ANALYSIS

[4-10] IRT argues the district court erred by granting Martin Brothers' motion to dismiss for lack of personal jurisdiction. We begin our analysis with the analytical framework for personal jurisdiction set forth in *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018). The Nebraska Supreme Court stated:

> Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions. Courts' ability to validly exercise personal jurisdiction is not without limit. The Due Process Clause of the 14th Amendment to the U.S. Constitution bars a court from exercising personal jurisdiction over an out-of-state defendant, served with process outside the state, unless that defendant has sufficient ties to the forum state.

- 936 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

A two-step analysis is used to determine whether a Nebraska court may validly exercise personal jurisdiction over an out-of-state defendant. First, a court must consider whether Nebraska's long-arm statute [Neb. Rev. Stat. § 25-536 (Reissue 2016)] authorizes the exercise of personal jurisdiction over the defendant. Second, a court must consider whether the exercise of personal jurisdiction over the defendant comports with due process.

Nebraska's long-arm statute authorizes courts to exercise personal jurisdiction over any person "[w]ho has any . . . contact with or maintains any . . . relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." Thus, if a Nebraska court's exercise of personal jurisdiction would comport with the Due Process Clause of the 14th Amendment, it is authorized by the long-arm statute. . . .

To satisfy the Due Process Clause, a court may only exercise personal jurisdiction over a defendant that is not present in the forum state if that defendant has "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" To constitute sufficient minimum contacts, "the defendant's conduct and connection with the forum State [must be] such that he [or she] should reasonably anticipate being haled into court there." Whether a defendant's contacts with the forum state are sufficient to support the exercise of personal jurisdiction "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Thus, "[j]urisdiction is proper . . . where the [defendant's] contacts

- 937 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

proximately result from actions by the defendant [himself or herself] that create a 'substantial connection' with the forum State."

*Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. at 722-24, 905 N.W.2d at 660-61.

[11] *Lone Star Steakhouse* also addresses the two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General, or "all-purpose," jurisdiction arises where a defendant's affiliations with the forum state are continuous and systematic. *Id*. at 725, 905 N.W.2d at 662. In the present case, there is no allegation that Martin Brothers' contacts with Nebraska were so continuous and systematic as to give rise to Nebraska having general jurisdiction over this California corporation. The facts presented in this case do not support a finding of general jurisdiction, and notably, IRT does not make such an argument. Instead, IRT argues that "[e]ven where, as here, a defendant's *general* contacts with the forum state may not be substantial, continuous, and systematic, 'specific jurisdiction' over the defendant may be present depending upon the quality and nature of *individual contact* with the plaintiff." Brief for appellant at 11 (emphasis in original).

[12-14] Specific, or case-linked, jurisdiction requires that a claim arise out of or relate to the defendant's contacts with the forum. *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018). Thus, there must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Id*. We agree that our analysis should focus on specific personal jurisdiction, and we begin with Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), which provides in relevant part:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

- 938 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

(a) Transacting any business in this state;

. . . .

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Nebraska's long-arm statute, § 25-536, extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018). Section 25-536 "suggests a broad application of the exercise of personal jurisdiction by the courts of this state, an application which is supported by case law." *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 480, 675 N.W.2d 642, 648 (2004). "It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents." *Id*. "Thus, if a Nebraska court's exercise of personal jurisdiction would comport with the Due Process Clause of the 14th Amendment, it is authorized by the long-arm statute." *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. at 723, 905 N.W.2d at 661.

Nebraska's long-arm statute provides for personal jurisdiction over business transactions in this State; therefore, we consider whether the exercise of personal jurisdiction in the present matter would comport with the Due Process Clause of the 14th Amendment. To satisfy due process, we would have to conclude that Martin Brothers had sufficient minimum contacts with Nebraska and that the exercise of jurisdiction over Martin Brothers in Nebraska does not offend traditional notions of fair play and substantial justice. See *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse, supra*.

[15-17] The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled

- 939 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

into court there. *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003). Whether a defendant's contacts with the forum state are sufficient to support the exercise of personal jurisdiction will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse, supra.* Personal jurisdiction is proper where the defendant's contacts proximately result from actions by the defendant himself or herself that create a substantial connection with the forum state. *Id.*

[18] IRT contends that Martin Brothers' contacts with Nebraska were greater than those of the Florida defendant in *Quality Pork Internat. v. Rupari Food Servs., supra*, a case in which the Nebraska Supreme Court concluded there were sufficient minimum contacts with Nebraska to satisfy the due process requirements for the exercise of specific personal jurisdiction. In that case, a Nebraska company only agreed to do business with a Texas distributor if the Florida defendant agreed to pay for all the products ordered. When the Florida defendant failed to pay after a third order, the Nebraska company filed a lawsuit in Nebraska. The Florida defendant claimed there was no personal jurisdiction because it never made any sales directly to Nebraska, it did not apply to do business in Nebraska, it did not have offices located in Nebraska, it did not own property in Nebraska, and at no time did any officer or employee visit Nebraska while employed by the Florida company. The Nebraska Supreme Court concluded that the Florida defendant induced a Nebraska company to ship products to Texas and that it would not be unduly burdensome for the Florida defendant to defend an action in Nebraska. The court stated that the Nebraska company had a valid interest in obtaining convenient and effective relief which supported bringing the action in Nebraska. Further,

- 940 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

by purposefully conducting business with the Nebraska company, the Florida defendant "could reasonably anticipate that it might be sued in Nebraska if it failed to pay for products ordered from [the Nebraska company]." *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 485, 675 N.W.2d 642, 652 (2004). Notably, the Nebraska Supreme Court stated that "[t]o determine whether a defendant's contract supplies the contacts necessary for personal jurisdiction in a forum state, a court is to consider the parties' prior negotiations and future contemplated consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 484, 675 N.W.2d at 651.

IRT argues that "[t]he sum total of contacts in *Quality Pork* [*Internat.*] consisted of an oral agreement to pay for some food shipments to be sent to Texas, receiving invoices in Florida, mailing two checks from Florida to Nebraska, and two phone conversations after default." Brief for appellant at 14. IRT points out that in the instant case, Martin Brothers initiated the contact with IRT and "engaged in numerous communications related to pricing, delivery, operation and possible collateral uses of the product after purchase and, ultimately, agreed to the purchase, confirmed by a signed purchase agreement faxed to Nebraska." Brief for appellant at 12. "It is difficult to comprehend how [Martin Brothers] can claim it could not have expected to be haled into court in Nebraska, after unequivocally contracting to purchase a six-figure piece of equipment and repeatedly contacting IRT regarding [the] purchase." *Id*.

[19] On the other hand, Martin Brothers argues that "[m]erely contracting with a resident of a particular forum is insufficient to provide the requisite contact to confer personal jurisdiction." Brief for appellee at 9. This assertion is supported in *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 512, 658 N.W.2d 40, 47-48 (2003), which states, "[T]he existence of a contract with a party in a forum state or the mere use of interstate facilities, such as telephones and mail, does not, in and

- 941 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

of itself, provide the necessary contacts for personal jurisdiction." See, also, *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018) (while contract alone does not establish minimum contacts, establishment of continuing relationship with obligations to instate party could); *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014) (mail and telephone communication sent by defendant into forum state may count toward minimum contacts, but existence of contract or mere use of interstate facilities does not, in and of itself, provide necessary contacts for personal jurisdiction); *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998) (jurisdiction not sought on basis of single contract or few contacts; rather, companies engaged in ongoing contractual and business relationship over period of years).

[20,21] *Kugler Co.* goes on to state, "But this does not mean that the existence of a contract and the use of interstate communications may not be considered in the overall analysis. 265 Neb. at 512, 658 N.W.2d at 48. "We will also consider the prior negotiations between the parties and contemplated consequences." *Id*. And, "[I]f a substantial connection is created, even a single contact can support jurisdiction." *Id*. at 512-13, 658 N.W.2d at 48. While the Nebraska Supreme Court concluded there were sufficient minimum contacts for the exercise of personal jurisdiction in *Kugler Co.*, of significance is that there was an ongoing relationship between the Nebraska company and the New York defendant involved in that case, and a substantial amount of product was sold to the Nebraska company. (Between 1992 and 1999, 399 tons of nitrogen products were sold at an approximate cost of $179,472.) The products were then sold within Nebraska. The Nebraska Supreme Court stated that "[p]arties who ""'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."'" *Id*. at 513, 658 N.W.2d at 48.

- 942 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

[22] Applied here, both *Quality Pork Internat.* and *Kugler Co.* would support personal jurisdiction when a single contract is involved; however, the existence of a contract or the mere use of interstate communications does not, in and of itself, provide the necessary contacts for personal jurisdiction. Rather, whether a defendant's contract supplies the contacts necessary for personal jurisdiction in a forum state, a substantial connection must be created, which calls for consideration of the parties' prior negotiations and future contemplated consequences, along with the terms of the contract and the parties' actual course of dealing. See *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004), and *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018). *Quality Pork Internat. v. Rupari Food Servs., supra*, involved ongoing product shipments to a Texas distributor and ongoing payments by the Florida defendant, and *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003), involved ongoing product sales over many years. The quality and nature of these ongoing business transactions was found to satisfy the requirement of a substantial connection between the nonresident defendant and the forum state, thus establishing the necessary minimum contacts. However, we also note that an ongoing relationship, by itself, is not sufficient to establish personal jurisdiction. See *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014) (television programming service claimed breach of affiliation agreement; although monthly payments were made over course of at least 2 years, actual business dealings were extremely limited, and court found insufficient minimum contacts for personal jurisdiction). Clearly, the quality and nature of the ongoing business relationship is important, not just the fact that a business relationship exists.

We conclude a substantial connection was not established between Martin Brothers and Nebraska as a result of the execution of a single purchase order contract, along with the

- 943 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

emails and telephone calls which took place between July 29 and August 16, 2016. Unlike *Quality Pork Internat.* and *Kugler Co.*, the facts alleged here do not establish that Martin Brothers and IRT negotiated or contracted for any kind of ongoing, substantive business relationship; rather, the contract was for the purchase of a single piece of equipment, albeit of significant value. Although Martin Brothers did mention it had an equipment leasing company that might be able to rent out the Impactor to other parties in the future, there is no allegation that any other discussions were had or agreements reached in that regard. Therefore, even when considering the facts in the light most favorable to IRT, we conclude IRT failed to make a prima facie showing that Martin Brothers had sufficient minimum contacts with Nebraska to subject them to the jurisdiction of our courts.

[23] Having determined that Martin Brothers did not have the necessary minimum contacts to support the exercise of personal jurisdiction in Nebraska, we need not weigh the facts of the case to determine whether the exercise of personal jurisdiction would comport with fair play and substantial justice, which involves other considerations (such as the burden on the defendant, or as argued by IRT, the forum state's interest in adjudicating the dispute) for establishing jurisdiction upon a lesser showing of minimum contacts. See *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998) (determination of whether district court has jurisdiction is two-step process; first, court must establish necessary minimum contacts with Nebraska, and then, if such minimum contacts have been established, contacts may be considered in light of other factors to determine whether assertion of personal jurisdiction would comport with fair play and substantial justice). Since these other factors or considerations only come into play once minimum contacts are established, we need not consider them in the present appeal given our conclusion that the facts do not set forth the necessary minimum contacts for

- 944 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
ROTH GRADING v. MARTIN BROS. CONSTR.
Cite as 25 Neb. App. 928

a Nebraska court to exercise personal jurisdiction over Martin Brothers.

## CONCLUSION

For the reasons set forth above, we affirm the district court's order dismissing IRT's complaint for lack of personal jurisdiction.

Affirmed